UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| **NEIGHBORHOOD ASSISTANCE** ) | | |
| **CORPORATION OF AMERICA,** ) | | |
| 3607 Washington Street ) | CIVIL ACTION NO: _____ | |
| Jamaica Plain, MA  02130, ) | | |
| Plaintiff, ) | | |
| v. ) | **COMPLAINT** | |
| ) | | |
| **NEIGHBORHOOD REINVESTMENT** ) | | |
| **CORPORATION dba** ) | | |
| **NEIGHBORWORKS AMERICA,** ) | | |
| 1325 G Street, NW, Suite 800 ) | | |
| Washington, DC  20005-3100, ) | | |
| Defendant. ) | | |

## COMPLAINT FOR DECLARATORY JUDGMENT

Plaintiff, Neighborhood Assistance Corporation of America ("NACA"), in support of its

complaint against the Neighborhood Reinvestment Corporation dba NeighborWorks America

("NWA"), seeking relief pursuant 28 U.S.C. 2201, alleges the following:

### INTRODUCTION

1.      NACA brings this action challenging NWA's procedures for funding, evaluating

the performance of, and renewing grants for organizations performing services to prevent home

foreclosures under various programs administered by NWA.

2.      NWA was established under Title VI of the Housing and Community

Development Amendments of 1978, 42 U.S.C. § 8101 *et seq.*, for the express purpose to

"continue the joint efforts … to promote reinvestment in older neighborhoods by local financial

institutions working cooperatively with community people and local government, and which will

continue the nonbureacratic approach of the Urban Reinvestment Task Force, relying largely on local initiative for the specific design of local programs." 42 U.S.C. § 8101.

3.    Pursuant to Title III – Omnibus Appropriations Act of 2010 and related legislation, NWA, in administering grants for the National Foreclosure Mitigation Counseling Program ("NFMC"), was charged with the specific task of administering grants to HUD-approved organizations, like NACA, "to provide mortgage foreclosure mitigations assistance primarily to States and areas with high rates of defaults and foreclosures *to help eliminate the default and foreclosure of mortgages of owner-occupied single-family homes that are at risk of such foreclosure*." Title III – Omnibus Appropriations Act of 2010 – Dec. 16, 2009, P.L. 111-117 (emphasis added).

4.    NWA is exceeding its authority and abusing its public trust by not ensuring that funds designated for the elimination of the default and foreclosure of owner-occupied single-family homes are being used for this purpose.  As a result, homeowners facing foreclosure are losing their homes, and organizations which could prevent such foreclosures are being passed over for funding in favor of organizations that have no demonstrated success in the prevention of foreclosures.

5.    NWA also administers grants for the Emergency Homeowner Loan Program ("EHLP"), created pursuant to the Dodd-Frank Wall Street Reform and Consumer Protection Act, the relevant portions of which are codified at 12 U.S.C. § 2701 *et seq..*  This program is designed to provide loans of up to $50,000 to individuals with reduced income who are otherwise unable to pay their mortgages.  The program is funded with approximately $1 billion, funds set aside to provide direct assistance to help people save their homes and families.  EHLP funds cannot be used after September 30, 2011.  12 U.S.C. § 2708.

6.      EHLP funds are to "provide a standby authority which will prevent widespread mortgage foreclosures and distress sales of homes resulting form the temporary loss of employment and income through a program of emergency loan and advances and emergency mortgage relief payments to homeowners to defray mortgage expenses." 12 U.S.C. § 2701.

7.      NWA is improperly withholding EHLP funds from qualified entities, like NACA, who stand ready and able to help such homeowners avoid foreclosure, despite the fact that much of the EHLP funding will, as a result of its mismanagement, go unused and be returned to the Treasury.

8.      NACA has an interest, as an entity qualified to receive and distribute these funds, in ensuring their proper disposition.

## PARTIES

9.      NACA is a not-for-profit corporation, with tax-exempt status under Section 501(c)(4) of the Internal Revenue Code.  For decades, NACA has successfully provided mortgage-related housing assistance to low- and moderate-income people and communities across the country.  Operating from offices in 25 states and the District of Columbia, NACA is the largest HUD-certified housing-counseling agency in the country, providing approximately 30% of all housing-counseling services.

10.     One of NACA's most successful initiatives is the HomeSave Program, through which NACA has counseled hundreds of thousands of families through the process of seeking mortgage assistance from their respective servicers and investors and has successfully prevented the foreclosure of tens of thousands of homes.  HomeSave Program services are provided to homeowners free of charge.  NACA's HomeSave Program – and its unparalleled success in

preventing foreclosures – has been profiled in numerous national and local stories, in all forms of media.

11.     A second and equally successful initiative conducted by NACA is the Purchase Program, through which NACA has counseled tens of thousands of families through the process of obtaining an affordable mortgage and purchasing a home.  Prospective homeowners who participate in NACA's Purchase Program receive counseling services as well as loan origination services, which NACA and its employees are duly licensed to provide.

12.     NWA is a not-for-profit corporation that provides NFMC and other funding to housing-counseling organizations like NACA.  NWA, on behalf of HUD, also administers the EHLP.

## JURISDICTION AND VENUE

13.     This Court is both the proper jurisdiction and venue for the present action pursuant to 28 U.S.C. § 1331 and 1391(b).

## FACTS

14.     NWA is required to administer federal grants, including those for the NFMC and EHLP, in compliance with the purpose for which the public monies and grants are authorized.

15.     Congress launched the NFMC in December 2007 "to provide mortgage foreclosure mitigation assistance primarily to States and areas with high rates of defaults and foreclosures primarily in the sub prime housing market to help eliminate the default and foreclosure of mortgages of owner-occupied single-family homes that are at risk of such foreclosure."  Title III – Consolidated Appropriations Act of 2008 – Dec. 26, 2007, P.L. 110-161

16.     Specifically, Congress appropriated NFMC funds ("Foreclosure Mitigation funds") to NWA, to be distributed to achieve the above-described purpose

17.     Since NFMC's first appropriation in 2008, Congress, through similarly worded appropriations bills, has reauthorized and funded NFMC on four separate occasions, with each disbursement of Foreclosure Mitigation funds constituting a "round" or "step."

18.     Applicants who have never before been recipients of Foreclosure Mitigation funds are not required by NWA to provide any material information or projection regarding:  1) how their receipt and use of Foreclosure Mitigation funds will actually help eliminate foreclosures; or, 2) how many owner-occupied single-family homes have been, or will be, saved from foreclosure by the receipt and use of such funds.

19.     Applicants who have received Foreclosure Mitigation funds and seek further funding are not required to provide any material information or accounting on regarding:  1) how their receipt and use of the Foreclosure Mitigation funds actually helped eliminate foreclosures; and, 2) how many owner-occupied single-family homes were actually saved from foreclosure as a result of previous funding.  Absent such information, NWA does not know – and could not possibly ascertain – whether public funds under its trust and charge are being properly spent and accounted for in accordance with Congress's directives, as contained in Title III – Omnibus Appropriations Act of 2010, P.L. 111-117 and related legislation.  Likewise, NWA does not know – and could not possibly ascertain – whether it has granted such funds to the most qualified programs, such as NACA.

20.     There is virtually no follow-up by other grant recipients or NWA to determine whether the counseling by individual grant recipients was successful.

21.     Many recipients of Foreclosure Mitigation funds merely provide basic counseling to homeowners facing foreclosure and determine the amount those homeowners can afford to pay on a mortgage without even submitting the file to the servicer.  For those grant recipients

who submit the homeowners file to the servicer, there is very little follow-up to determine the actual outcome. In fact the homeowners are turned back over to their mortgage servicers where the well documented servicing bottlenecks and problems continue.  Although some studies indicate that mortgage-counseling generally decreases defaults and foreclosures, there are no independent studies or statistics regarding any of the particular grant recipients using Foreclosure Mitigation funds to establish specifically whether the funds NWA allocates are being used successfully to meet the mandates of Title III – Omnibus Appropriations Act of 2010, P.L. 111-117, and related legislation.

22.      For instance, NWA's Round 5 grant-application evaluation process for Foreclosure Mitigation funds evaluates grant recipients on how quickly they spent monies previously allocated to them and the likelihood that they would be able to spend additional monies allocated in Round 5.  This process does not, however, include evaluation of *how* the money was spent, and, specifically, whether it was effectively spent toward the purpose of "eliminating the default and foreclosure of mortgages of owner-occupied single-family homes at risk of foreclosure."  See Round 5 Grant Evaluation Process, attached as Exhibit A.  The "skill" and record of spending money fast have absolutely nothing to do with the express purpose of the funds placed under NWA's charge, yet it is by this criterion that NWA determines whether to award grantees additional funding.  In fact, NWA senior staff have admitted that whether a grant applicant achieves effective solutions for homeowner is not in any way considered in the grant application or evaluation process.

23.      NACA received Foreclosure Mitigation funds up through Round 4 of the current grant process.  With such funds, NACA prevented thousands of foreclosures, likely far more

than any other grantee under the program administered by NWA. Nevertheless, NACA was denied additional funding.

24.     As an agency that has helped and can help persons facing foreclosure, NACA has an interest in ensuring that the Foreclosure Mitigation funds administered by NWA are being used for their statutorily-mandated purpose.

25.     NWA also fails to administer other programs properly.

26.     NWA also administers grants for EHLP. The Emergency Homeowners' Relief Fund, which provides the EHLP funds, was established to make available "such sums as are necessary to provide $1,000,000,000 in assistance through the Emergency Homeowners' Relief Fund, which such Secretary [of HUD] shall establish … for use in emergency mortgage assistance…." P.L. 111-203 – July 21, 2010, § 1496.

27.     Unused EHLP funds must be returned to the Treasury by September 30, 2011, and many at-risk homeowners, unable to obtain EHLP assistance, will likely face foreclosure.

28.     NACA meets all requirements and is qualified to receive EHLP funds to help qualifying homeowners and prevent foreclosures. NACA requested an allocation that would have amounted to approximately 70% of the total EHLP program funding and, if permitted to participate, NACA would have ensured that such funding made its way to tens of thousands of homeowners seeking NACA's assistance who could qualify for EHLP grants, thus assuring full and proper utilization of EHLP funds.

29.     Despite NACA's qualification to receive such funds, NWA did not allocate any EHLP funds to NACA. The impact is devastating, with homeowners in 28 states with reduced income not having access to up to $50,000 in assistance once these funds are returned to the Treasury.

## CAUSE OF ACTION
## DECLARATORY JUDGMENT: IMPROPER ADMINISTRATION OF
## NATIONAL FORECLOSURE MITIGATION COUNSELING PROGRAM

30.     NACA repeats, realleges, and incorporates the allegations contained in the preceding paragraphs as if fully set forth herein.

31.     NWA administered grants of Foreclosure Mitigation funds are to be used for the purpose of "eliminating the default and foreclosure of mortgages of owner-occupied single-family homes at risk of foreclosure."

32.     NWA administered grants of these funds have been awarded without regard to whether they are being used toward that purpose.

33.     The declaratory judgment sought is concrete and touches upon the legal relations of the parties who, if NWA continues on its present course of action, have adverse legal interests.

34.     The declaratory judgment requested will give specific relief based on the facts and allegations of the dispute.

WHEREFORE, NACA seeks declaratory relief under 28 U.S.C. § 2201:

A.     Declaring that NWA has failed to properly administer grants under Title III – Omnibus Appropriations Act of 2010, P.L. 111-117 and related legislation;

B.     Declaring that NWA properly administer grants hereinafter to ensure that the use of such funds will be in accordance with the their mandated purpose;

C.     Declaring all grants awarded NWA be suspended until NWA implements procedures and demonstrates to the Court that such funds have been awarded and will be used in accordance with their mandated purpose;

D.     Declaring that NWA reopen its Round 5 grant process and that NWA demonstrate to the Court that it will issue grant funds solely to organizations that will best meet the mandated purpose of such funds by preventing foreclosure of owner-occupied single-family homes; and,

E.      Awarding NACA such other and further relief as this Court deems just and proper

under the circumstances.

                              Respectfully submitted,

                              **BODE & GRENIER, LLP**

                              By: _____
                              Douglas E. Fierberg, Esq.
                              Andre M. Gregorian, Esq.
                              Counsel for NACA
                              1150 Connecticut Ave, NW, Ninth Floor
                              Washington, DC  20036
                              202-828-4100
                              202-828-4130 – *facsimile*

Dated: August 15, 2011